# COX v. DIXIE POWER CO.

No. 5153.  Decided December 16, 1932.  (16 P. [2d] 916.)

*J. M. Foster,* of Cedar City, and *Wm. B. Higgins,* of Fillmore, for appellant.

*D. H. Morris,* of St. George, and *H. R. Waldo,* of Salt Lake City, for respondent.

STRAUP, J.

The plaintiff, Cox, on two counts brought this action against the Dixie Power Company for the destruction of a two-story building valued at $3,000 and of furniture and household goods therein valued at $600, upon the ground of alleged negligence and defective electrical wiring of the building by the defendant. The building was owned by Caleb Height. The plaintiff, who was Height's tenant, owned the furniture and goods. As alleged, because of the negligent and defective wiring, the building was set on fire, completely destroying it and the furniture and goods. The first count or cause of action was on the assigned claim by Height to the plaintiff for the loss of the building; the second for the loss of furniture and goods. The defendant admitted wiring the building and turning in the electrical current for use, but denied the alleged negligence or de-

fective wiring and the loss or injury resulting from the wiring.

The case was tried three times to a jury. The first trial resulted in a verdict and judgment March 24, 1925, in favor of the plaintiff in the sum of $1,250 on the first cause of action and $300 on the second cause of action, and costs amounting to $84.40. On the same day the judgment was rendered, the defendant served and filed a notice of motion for a new trial, therein stating that the motion would be "made on the 1st day of the next regular term of court to convene June 23, 1925." There being no stay of execution granted, the plaintiff caused an execution to be issued on the judgment. The sheriff thereunder, on March 28, 1925, levied on $479.03 of the defendant's moneys in the Bank of Southern Utah at Cedar City. Upon an amended motion for a new trial and upon a stay bond, the attached moneys were released. There being no other stay ordered, the plaintiff April 7, 1925, caused a further levy to be made by execution on $1,243.21 of the defendant's moneys in the Bank of Southern Utah. The bank, answering that the defendant had such moneys on deposit, and there being no stay of execution ordered, delivered the moneys to the sheriff, who in turn delivered them to counsel for the plaintiff, after deducting his costs amounting to $20.10. April 18, 1925, the defendant filed, and on April 20 served, a notice of a motion for an order staying execution on the judgment, for a release of the attached property, and restraining the plaintiff, his attorneys and the sheriff, "from disposing or using any of the attached properties." Such an order was granted ex parte on the same day, and was filed May 12, 1925. On May 18, 1925, the order, on motion of the plaintiff, was annulled and set aside. The defendant thereupon and on the same day filed and served a further motion for a stay of execution which also ex parte was granted on the 26th day of May, 1925; the court in such order reciting, among other things, that on March 28 the defendant filed with the clerk of the court "a stay bond in the sum of $3,300," and

that no objection had been made thereto. The court thus ordered that the execution of the judgment be stayed pending the disposition of the motion for a new trial. A copy of the order was served on the attorneys for the plaintiff. The undertaking or stay bond is not in the record nor are any of the conditions thereof set forth except as recited in the order that "a stay bond in the sum of $3,300" was on file.

A new trial of the cause was granted by the court December 5, 1925. December 18, 1925, the defendant made a written demand on the plaintiff and his attorneys for a return to the bank of the $1,243.21 paid to them under the execution and to be placed to the credit of the defendant. Without a hearing or service of notice, the court January 27, 1926, entered an order that the plaintiff, his attorneys and the sheriff, release the attached moneys under the levy and return the same to the bank to be placed to the credit of the defendant. A copy of that order was served February 3, 1926, on counsel for the plaintiff and the sheriff. The moneys not having been returned, on motion of the defendant, a citation was issued March 19 and 22, 1926, citing the plaintiff, his attorneys, and the sheriff to show cause why they should not be punished for contempt, but, on motion of counsel for the plaintiff, the citation was annulled and dismissed; and there the matter with respect to the levy and the return of the moneys rested.

A second trial of the cause was had, and a verdict rendered December 14, 1926, in the sum of $1,800 on the first cause of action and for $400 on the second cause of action, upon which a judgment was rendered and entered in the sum of $2,200 and $290.40 costs in favor of the plaintiff. A motion for a new trial was again filed and served by the defendant, and a stay bond served and filed in the sum of $5,000, staying execution and all proceedings on the judgment. That undertaking is in the record. An order was duly made staying all proceedings on the judgment. On August 27, 1927, the court retaxed the costs, striking $107

from the cost bill, and at the same time granted a new trial of the cause, unless the plaintiff within ten days remitted $1,000 from the judgment. The plaintiff declined to make the reduction, and so a new trial was granted.

There the matter again rested until November 8, 1927, when the defendant filed a motion for a change of venue from Iron county, where the case was commenced and twice tried, to Washington county. The motion, over plaintiff's objection, was granted February 28, 1928, at which time the case was transferred for retrial to Washington county. The case was there tried the third time before a jury, and a verdict rendered November 30, 1929, in favor of the plaintiff in the sum of $1,500 without indicating how much was awarded on each cause of action. A judgment was entered for that amount and for $238.66 costs. The defendant again filed a motion for a new trial and to retax costs. The costs were retaxed; the court on January 4, 1930, striking $39.60 from the cost bill, leaving the taxable costs at $199.06, and on the same day overruled the motion for a new trial. The defendant thereupon and on the same day filed an undertaking staying execution of the judgment on appeal, and obtained various extensions of time to prepare and serve a bill of exceptions on appeal. No bill was prepared or served and no appeal taken by it. However, on July 7, 1930, more than six months after the judgment became final and after the time in which an appeal could legally be taken, the defendant served and filed a petition in the cause for an order to show cause why the plaintiff and his counsel should not be required to apply the $1,243.21, together with interest thereon theretofore received and retained by them on the execution, in satisfaction of the judgment. Upon a hearing had, an order was made by the court December 30, 1930, directing that the sum of $1,243.21, together with interest thereon amounting to $461.04 at 8 per cent per annum from April 7, 1925, when the moneys were paid to the sheriff by the bank, to November 30, 1929, when the final judgment was rendered, or a total of $1,704.25, be by the plaintiff

applied or credited in satisfaction of the judgment, which amount more than canceled the judgment of November, 1929, including costs. From that order or judgment the plaintiff has prosecuted this appeal.

No proceedings except as indicated are certified or transmitted to this court. No error is predicated on the rulings granting the several motions for a new trial and no record or bill presented whereby any of such rulings may be reviewed. Prior hereto on certiorari proceedings an application was made to this court to annul the order which the court made granting the change of venue. An alternative writ was issued, but on the hearing thereof the writ was denied; this court holding that a want or an excess of jurisdiction was not shown. *Cox* v. *Dixie Power Co.*, 72 Utah 236, 269 P. 1000. Except the order appealed from, no error is predicated on the various rulings and orders made as presented by the record on the appeal, except in connection therewith some of the ex parte orders. As disclosed by the record, there seems to be some irregularities in the proceedings. Five different judges at different times sat in hearings of the cause and in hearing motions and applications for orders; and some motions and orders granted by one judge were subsequently annulled and set aside by an other judge. With respect to the hearings and the granting of motions and orders, not only were the parties themselves in discord, but in some particulars the judges themselves seemed to disagree, and annulled and set aside each other's orders resulting in more or less confusion.

In the main, however, it was the contention of the defendant in the court below, and it is its contention here, that, when the first new trial was granted, December 5, 1925, and the judgment theretofore rendered vacated and set aside, the defendant was entitled to an immediate restitution of the $1,243.21 moneys of the defendant collected from the bank on execution and by the bank paid over to the sheriff and by him to the plaintiff or his counsel, together with interest thereon from April 7, 1925, when the moneys were

so paid and received, regardless of whatever subsequent proceedings might be had in the cause; and, the plaintiff or his counsel having retained such moneys, the defendant was entitled to have them applied in satisfaction of the last and final judgment rendered and entered in the cause and as ordered by the court.

On the other hand, the plaintiff in the court below, in resisting the order appealed from, urged, and here urges, that, while the defendant, when the first new trial was granted vacating and setting aside the first judgment, was entitled to an immediate restitution of the $1,243.21 collected on the judgment, yet on several alleged grounds claimed that the defendant lost such right and hence was not entitled to have restitution of such moneys and have them applied in satisfaction of the judgment and that the court was without jurisdiction to grant the demanded relief. The first ground urged is that, when the new trial was granted, the defendant by way of supplemental answer or counterclaim was required to plead the receipt of such moneys by the plaintiff, either as payment or part payment or as a set-off against whatever judgment might thereafter be recovered in the action by the plaintiff, and, if no judgment was recovered, or one less than the amount of moneys received by the plaintiff, then judgment accordingly for the defendant on its counterclaim; and, not having done so, the defendant by reason of Comp. Laws Utah 1917, § 6577, waived whatever right it had in and to the moneys paid over to the plaintiff. We are not much impressed with such a contention, and think it answered against the plaintiff by the case of *Blake* v. *Farrell*, 31 Utah 110, 86 P. 805, although there seems to be authority to the effect that the amount so collected by the plaintiff might be or could have been treated as an offset to the cause of action and as a reduction to the amount of recovery to which the plaintiff might be shown to be entitled on further trial. 2 R. C. L. 298.

It, however, further and chiefly is urged by the plaintiff that the action presented or invoked by the defendant by the

serving and filing of its petition July 7, 1930, for restitution and to require the moneys collected April 7, 1925, and retained by the plaintiff to be applied in satisfaction of the judgment, was barred by the three-year statute of limitations (Comp. Laws Utah 1917, § 6468, subd. 3) relating to the time in which an action must be commenced "for taking, detaining, or injuring personal property," as well as by the four-year statute (Comp. Laws Utah 1917, §§ 6467 and 6474); that, if the plaintiff's contention as to the statute of limitations be held against him, it further is urged that all the defendant was entitled to have credited on the judgment was the amount of moneys, less interest received and retained by the plaintiff, especially since the plaintiff, on the amount of damages or loss as found by the jury on account of the destruction of the building and the goods and furniture, was not given or awarded interest thereon, and, if the defendant be given interest on the amount of moneys received by the plaintiff, the plaintiff should be given interest on the loss sustained by him, and, as he was not awarded interest on his claim, it would be inequitable to award the defendant interest on the moneys received by the plaintiff as part payment of the claim. In other words, as is argued, the defendant may not have the benefit of the moneys received by the plaintiff as part payment and at the same time have interest on such payment.

The question as to the bar of the statute is not entirely free from doubt. The brief of the defendant chiefly is devoted to the proposition that the defendant was entitled to restitution immediately after the new trial was granted and the first judgment vacated; and that the defendant was not required to file a supplemental answer or counterclaim as urged by the plaintiff. That the defendant, when the new trial was granted, was entitled to immediate restitution of the moneys collected on execution, is clear. 2 R. C. L. 291, 296; 4 C. J. 1235 et seq.; *Baltimore & O. R. Co.* v. *United States.* 279 U. S. 781, 49 S. Ct. 492, 73 L. Ed. 954; *Northwestern Fuel Co.* v. *Brock,* 139 U. S.

216, 11 S. Ct. 523, 35 L. Ed. 151. Such authorities teach that the right to restitution of what one has lost by the enforcement of a judgment subsequently reversed or vacated is well established, and, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and to correct what has been wrongfully done. Such principle or doctrine is not seriously disputed by the plaintiff. That is not what divides the parties. The particular point is as to when, if at all, the statute of limitations against the enforcement of the right commenced to run. In 37 C. J. 857, § 221, it is said that, where money is paid on a judgment which is afterwards modified or reversed by an appellate court, the judgment debtor's cause of action to recover back the money paid accrues at the time of the modification or reversal of the judgment. So, too, 4 C. J. 1235. The same doctrine is stated in 2 R. C. L. 298, § 250. And to that effect are the judicial authorities. *Crocker* v. *Clements' Adm'r*, 23 Ala. 296; *Simmons* v. *Simmons*, 91 W. Va. 32, 112 S. E. 189; *Hawley* v. *Simons*, 74 Ill. App. 222; *Weston* v. *Jones*, 160 Minn. 32, 199 N. W. 431; *Green* v. *Spokane County*, 55 Wash. 308, 104 P. 510, 25 L. R. A. (N. S.) 31, and notes; and notes to *Cowdery* v. *London, etc., Bank*, 96 Am. St. Rep. 144.

The same principle applies where the same court abrogates its own decision or judgment and grants a new trial. 2 R. C. L. 296; *Northwestern Fuel Co.* v. *Brock*, supra. Here the new trial was granted and the judgment set aside December 4, 1925. The cause of action for restitution of moneys collected April 7, 1925, on the judgment thus began to run December 4, 1925. The petition for restitution to require the moneys collected to be applied in satisfaction of the judgment, and upon which the order complained of was granted, was served and filed July 7, 1930, more than four years and seven months after the judgment was vacated and the new trial granted.

The defendant, in defense to the alleged bar of the statute, but broadly asserts that "no statute of limitations would

apply here under any circumstances," to support which it cites and relies on the case of *Keck* v. *Allender*, 42 W. Va. 420, 26 S. E. 437. Upon reading the case, it is apparent that the facts there are quite dissimilar from the facts here, and hence language there used has no application to the matter in hand. The defendant also relies on the case of *Blake* v. *Farrell*, supra, where it was held that the court had authority to compel satisfaction of a judgment to the extent of money seized and paid on an attachment. That may well be conceded. But the statute of limitations was not there involved. There in 1903 property in an action was seized on attachment. Judgment was rendered in the main action against the defendant in June, 1904. From that judgment he appealed to this court. The appeal was dismissed September, 1904. The plaintiff on demand failed to apply or credit on the judgment what he had collected on the attachment. Upon proceedings had, the court in March, 1905, ordered the plaintiff to credit on the judgment the amount he had collected on the attachment. On appeal by the plaintiff that order was affirmed. All the proceedings were had within two years, and thus it is clear no statute of limitations was involved.

We therefore look further with respect to the proceedings had herein bearing on the matter in hand. As has been seen, the first judgment was rendered and entered March 24, 1925. The exceution was levied and the moneys in question collected April 7, 1925. On motion of the defendant, an order and an injunction was granted April 18, 1925, restraining the plaintiff and his counsel from "using or disposing" of any of the property seized on execution and commanding them to hold the moneys "subject to the order of the court." That order on motion of the plaintiff was set aside May 12, 1925. On May 26, 1925, on motion of the defendant, the court granted an ex parte order staying all proceedings on execution "pending the disposition of the motion for a new trial." On December 5, 1925, the new trial was granted, and the judgment theretofore rendered

and entered vacated and set aside. Following that, the defendant on December 18, 1925, made a written demand on the plaintiff that the moneys collected on the execution be returned to the bank "and placed to the credit of the defendant." On motion of the defendant, a further ex parte order was granted January 27, 1926, directing the plaintiff, his counsel, and the sheriff "to release the levy and attachment on execution and return the moneys to the bank to be placed to the credit of the defendant." A copy of that order was served on counsel for the plaintiff and on the sheriff February 3, 1926. On motion of the defendant a citation was issued March 19 and 22, 1926, which was served on counsel for the plaintiff and the sheriff, to show cause why they should not be punished for contempt for failing to "comply with the order of January 27, 1926." On March 22 the plaintiff served and filed a motion to quash the citation upon the ground that the court was without jurisdiction, which motion was granted and the citation quashed and annulled. There the matter was permitted to rest until the filing of the petition by the defendant July 7, 1930, requiring the moneys collected on the execution to be applied in satisfaction of the judgment rendered November 30, 1929, which judgment became final January 4, 1930, upon the overruling of the defendant's motion for a new trial.

Several remedies were open to the defendant for restitution; an action for money had and received or an equivalent proceeding, or by motion in the same suit invoking the summary jurisdiction of the court and upon the issuance of such writs as were necessary to compel obedience to its judgment or order. 2 R. C. L. 296; 4 C. J. 138. Apparently the defendant attempted to proceed by motion in the same suit by obtaining an ex parte order on January 27, 1926, requiring the plaintiff, his counsel and the sheriff to return the moneys collected to the bank to be placed to the credit of the defendant, a copy of which order was served February 3, 1926. If that order, because it was granted ex parte, is here assailable, or if valid notwithstand-

ing it was granted ex parte, but had not the effect of a judgment, it is of no avail to the defendant after more than four years and seven months elapsed between the granting and the service of the order and the filing of the petition by the defendant July 7, 1930. It is only on the theory that the order, though granted ex parte January 27, 1926, had the effect of a valid judgment, and the facts with respect thereto not doubtful or controverted and the judgment enforceable by execution or by other appropriate writs, that the amount of such judgment may be ordered applied in satisfaction and discharge of the judgment of November 30, 1929, in favor of the plaintiff and against the defendant. That is to say, if the effect of the order constituted a valid judgment when made and entered, then it as such was a subsisting and an enforceable judgment on July 7, 1930, when the application was made to have it applied in satisfaction and discharge of the final judgment rendered in favor of the plaintiff and against the defendant. Comp. Laws Utah 1917, § 6465.

Where a court has jurisdiction of a cause and of the parties, there are undoubtedly various orders which the court in the progress of the cause may make without notice to the adverse party and be of binding effect, in the absence of a motion or notice to vacate or modify the order. But such doctrine applies only to such orders as the court has power to make without notice. It does not apply to a purported ex parte order whose effect is to deprive a party of property without due process of law or which constitutes a final order affecting substantial rights and from which an appeal lies. A motion is not an action, the latter being an independent remedy, while the former relates to some incidental question collateral to the main object of the principal cause. An order is the decision of a motion, while a judgment is the decision of a trial and final adjudication of a cause. In other words, a motion ordinarily is confined to incidental matters in the progress of the cause. 20 R. C. L. 514; 42 C. J. 465 et seq., 543; 18 Cal. Jur. 672. In the

case of *Boca, etc., R. Co.* v. *Superior Court,* 150 Cal. 147, 88 P. 715, 717, the court said:

"It is urged that, under section 937, Code Civ. Proc., the only remedy in case of an order made without notice to the adverse party is an application to the judge, ex parte or on notice, that it be vacated, which application is addressed to the discretion of the court. Manifestly, this provision of law is applicable only to such orders as a court or judge has power or jurisdiction to make without notice. It is not within the jurisdiction of a court or judge to deprive a person of property without due process of law, and a purported order having such an effect may be annulled on certiorari."

The court there well recognized that, while relief for restitution may summarily be granted, it also recognized the necessity of notice to the adverse party and an opportunity to be heard. A view seems to be entertained by the defendant that in such case relief may be granted in a summary proceeding and a binding order for restitution may be made without notice. But that does not follow. A summary proceeding is a form of trial in which the established course of a legal proceeding is disregarded, especially in the matter of trial by jury, etc., and no cause can be tried summarily or otherwise than in due course. *Clarke* v. *City of Evansville,* 75 Ind. App. 500, 131 N. E. 82; *Yoder* v. *Commonwealth,* 107 Va. 823, 57 S. E. 581; 3 Bouv. Law Dict. 3182. Summary, in such case, means with dispatch, with the least possible delay, and in preference to ordinary legal and regular judicial proceedings. *Vance* v. *Noel,* 143 La. 477, 78 So. 741.; Standard Dictionary. However, the power to grant an order in a summary matter or proceeding does not mean that the power may be exercised without notice or a hearing, but simply that it may be done without a trial in the ordinary manner prescribed by law for regular judicial proceedings. *Western & A. R. Co.* v. *City of Atlanta,* 113 Ga. 537, 38 S. E. 996, 54 L. R. A. 294. Though the proceeding be summary, the adverse party nevertheless must be notified to appear and be apprised of the nature and purpose of the proceeding by notice or motion or by complaint

or affidavit which must show all facts necessary to support the proceeding. 37 Cyc. 530, and cases.

In view of all this, it is quite clear that the order of January 27, 1926, made without notice and a hearing, cannot have the effect of a binding judgment in favor of the defendant and against the plaintiff so as to entitle the defendant to set it up as such and have it applied in satisfaction and discharge of the judgment rendered and entered against the defendant in favor of the plaintiff. The further claim by the defendant that, since the plaintiff, having been served February 3, 1926, with a copy of the order of January 27, and taking no action to vacate the order the order became of binding effect, likewise is untenable, for the reason that, if the giving of some kind of notice to confer jurisdiction to grant the order was essential, and the order not being within that class of proceedings where the court had power to grant orders without notice, the granting of the order was without jurisdiction, and, as stated in the case of *Boca, etc., R. R. Co.* v. *Superior Court,* supra, could be annulled on certiorari. Further, in response to the citation to show cause why they should not be punished for contempt for failure to comply with the order of January 27, 1926, the plaintiff, his counsel, and the sheriff filed and served a motion to quash the citation on the ground that the court was without jurisdiction, which motion was granted and the citation quashed and annulled; and apparently further proceeding with respect to the enforcement of the order or to obtain restitution was abandoned by the defendant until the filing of its petition July 7, 1930.

It is needless to say that, when the appellate court reverses a judgment, and at the same time and as a part thereof orders restitution, such order on remittitur has all the effect of a judgment, and as such may be enforced in like manner as other judgments, for in such case the appellate court, having jurisdiction of the cause and of the parties, had undoubted jurisdiction to make and enforce an order of restitution or direct it to be enforced. In such case noth-

ing else was required but to enforce the judgment. We have no such order before us.

If the defendant thus was entitled to offset against or be credited on the final judgment the moneys collected on execution before the first judgment was set aside, it must rest on the provisions of Comp. Laws Utah 1917, § 6578:

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

The section in no particular was referred to by either counsel. Other sections of the statute relating to counterclaims were referred to by counsel for the plaintiff, and the claim made by them that, as no counterclaim or payment was pleaded, all rights of the defendant to now claim any credit on or set-off against the judgment were waived, "and that the judgment was conclusive evidence that it was due, to its full amount when recovered"—citing 34 C. J. 725, § 1118, and notes. What now is section 6578 was considered by this court in the case of *Utah Commercial, etc., Bank* v. *Fox*, 40 Utah 205, 120 P. 840, 846, wherein it was said:

"In passing upon the statute of limitations the court should bear in mind the fact that while there may be claims preferred by a party which are barred by the statute of limitations in so far as to prevent a judgment in his favor, yet, in so far as to permit him to have such claims applied as compensation for, or as a set-off against his adversary's claims, they may not be barred under the provisions of Comp. Laws 1907, § 2971," which is the same as section 6578, Comp. Laws Utah 1917.

In considering a similar statute, the Kansas court in the case of *O'Neil* v. *Eppler*, 99 Kan. 493, 162 P. 311, as reflected by the syllabi, held that, under section 102 of their Civil Code equivalent to section 6578 of our statute, parties holding cross-demands against each other, under such circumstances that, if one had brought a suit against the

other, a counterclaim or set-off could have been set up, will not be deprived of the benefit of them by reason of the statute of limitations, but, if the demand of one party becomes completely barred before the demand of the other comes into existence, the barred demand is not available as a set-off against the live demand. Under such a statute, the ruling is general that, where the defendant pleads a set-off to plaintiff's demand to which the plaintiff replies the statute of limitations, the defendant is nevertheless entitled to the set-off where it was a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in suit. 37 C. J. 806; *Dillon* v. *Cross*, 5 Cal. App. 766, 91 P. 439; *Merrill* v. *Merrill*, 215 Ill. App. 602; *First National Bank of Chicago* v. *Rogers, Brown & Co.* (D. C.) 299 F. 602; *Peden* v. *Cavins*, 134 Ind. 494, 34 N. E. 7, 39 Am. St. Rep. 276; *Shaw* v. *Faires* (Tex. Civ. App.) 165 S. W. 501; *Scrivner* v. *McClelland*, 75 Okl. 239, 182 P. 503.

In all such cases, including the case of *Utah Commercial, etc., Bank* v. *Fox*, supra, a counterclaim or set-off was pleaded in the action against plaintiff's claim or demand. The further question is whether the claimed right of the defendant required to be pleaded and whether it was lost because it was not pleaded. The defendant's right or claim did not exist when the action was commenced, nor did it arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim, nor was it connected with the subject of the action. The claim thus was not included within section 6577, precluding the maintenance of an action afterward on a claim where the defendant omitted to set the claim up as a counterclaim. And then *Blake* v. *Farrell*, supra, is authority to the effect that, to entitle the defendant to have the moneys collected on execution applied or credited on the judgment, the defendant was not required to plead such claim as a counterclaim. The defendant's claim here grew out of proceedings had in the trial of the cause, and became and is a part of the record proceedings had therein. That the plaintiff on execution

collected $1,243.21 moneys of the defendant, which, less sheriff's costs of $20, were retained by the plaintiff after the judgment on which the execution was issued was set aside, is indisputably shown by the record proceedings themselves. The amount so collected and retained is certain and liquidated. Had the claim been set up as a counterclaim, not anything with respect thereto could have been made more certain or definite, or the defendant's right to a set-off more clearly shown, than is now intrinsically shown by the record in the cause without resort to anything extrinsic thereto. Since that is so, and since under the authorities the statute of limitations could not successfully have been interposed to the claim, if pleaded defensively and merely as a set-off and not for any affirmative relief, we are of the opinion that the defendant, because of the statute referred to, was entitled to be credited on the judgment when rendered and entered the amount so collected, less sheriff's costs, or the sum of $1,223.21. However, under the circumstances we further are of the opinion that on the record the defendant is not entitled to interest on the amount so collected from the defendant and involuntarily paid by it. If the demanded relief rests on the theory of payment, of the defendant having paid though involuntarily $1,223.21 on plaintiff's claim, the defendant would not have been entitled to interest on the payment, unless the plaintiff was given interest on his claim, which he was not, and, further, the delay in payment of the principal debt was somewhat the result of the neglect of the defendant to enforce such payment (33 C. J. 190) or restitution, and particularly by its motions and actions requiring and compelling the plaintiff at great cost and delay to try his cause three times, with a final result substantially no more favorable to the defendant than the result on the first trial.

The judgment of the court below thus is modified, and the case remanded to that court, with directions that the plaintiff be required to credit $1,223.21 on the final judgment recovered by him against the defendant, as of date Novem-

ber 30, 1929, when the final judgment was rendered and entered in plaintiff's favor and against the defendant; and that the judgment as of that date be so diminished in the sum of $1,223.21, and the plaintiff be given interest on the amount of the judgment, including costs so diminished until paid. Costs to the appellant.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.