In re ENERGY SAVINGS
CENTER, INC., Debtor.

Leo Francis DOYLE, Trustee for the Estate of Energy Savings Center, Inc.

v.

Louis D. PAOLINO, Jr.

v.

Norman A. COUNCIL.

Bankruptcy No. 85–6990.

United States District Court,
E.D. Pennsylvania.

May 12, 1986.

Henry Wessel, Philadelphia, Pa., for trustee.

Thomas A. Guise, Clerk U.S. Bankruptcy Court, Philadelphia, Pa., for plaintiff.

Louis Paolino, Jr., by James C. Kitch, William Shapiro, Bala Cynwyd, Pa., Norman Council by William Schroeder, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is an appeal pursuant to 28 U.S.C. § 158 from an adverse ruling entered in Bankruptcy Number 82–05070G. On October 22, 1985, Judge Goldhaber entered an

order awarding a judgment in the amount of $10,000 in favor of Leo Francis Doyle, trustee ("trustee") for the estate of Energy Savings Center, Inc. (debtor) and against defendant Louis D. Paolino, Jr. ("Paolino"). By the same order, judgment was entered in favor of Paolino and against third-party defendant Norman Council ("Council") for $12,000. Both Paolino and Council appeal from Judge Goldhaber's order; their appeals will be considered separately.

In reviewing the judgment of a bankruptcy court, a district court should not set aside the findings of fact unless they are "clearly erroneous." Bankr.R. 8013. Moreover, in reviewing the record, a district court should give "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.*

According to the bankruptcy court's finding of facts made in accordance with Bankruptcy Rule 7052, on November 2, 1979 Council entered into a lease with Paolino for the rent of property at 5 Fairview Avenue, Clifton Heights, Pennsylvania. *In re Energy Savings Center, Inc.*, 54 B.R. 100, 101 (Bankr.E.D.Pa.1985). In paragraph 15 of the lease, Council was given the right to use the name "Energy Savings Center" in connection with the property. *Id.* Several weeks later, Council formed a corporation named "Energy Savings Center, Inc."—i.e., the debtor herein—which, as president, he then operated at the rented premises. *Id.* Although the bankruptcy court found that rent on the property was paid by checks or money orders drawn both by Council and

by debtor, the court concluded that the parties to the lease intended the lease to run only between Paolino and Council, not between Paolino and the debtor. *Id.*

The bankruptcy court also found that, when Council fell behind in his rent payments, he told Paolino to satisfy Council's indebtedness of $12,000 by taking possession of the office furniture and inventory that belonged to the debtor. *Id.* Paolino followed Council's suggestion on or about October 6, 1982 and acquired debtor's property valued at $10,000. Subsequently, on October 22, 1982 debtor filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

The trustee then filed a complaint against Paolino, which was amended on February 3, 1983 with leave of the bankruptcy court. The amended complaint set forth alternative causes of action. In the first, the trustee sought a "turnover" of the debtor's property allegedly in the hands of Paolino.[1] In particular, the trustee alleged that "defendant is concealing from plaintiff ... certain office equipment and supplies, machinery, equipment and supplies ... used in business and inventory of a value of $11,500.00, or its proceeds, which are in his possession or under his control." Amended Complaint, at para. 6. In the second cause of action, the trustee sought recovery of the property on the basis that it was a "preference."[2] Here the trustee alleged that "an agreement was entered into by the debtor's president and the defendant [Paolino] to transfer all assets of

---

1. In essence, the "turnover" provision of the bankruptcy code, codified at 11 U.S.C. § 542, requires anyone holding property of the debtor's estate to deliver it to the trustee. Section 542(a) states in pertinent part:

    (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

2. A preference has been defined as favoritism shown by a debtor toward one or more of his creditors on the eve of bankruptcy. 4 *Collier on Bankruptcy* para. 547.01, at 547–8 to 547–9 (Lawrence P. King, ed. 1985). The applicable section, 11 U.S.C. § 547(b), sets out the six elements of a preference: 1) a "transfer of an interest of the debtor in property"; 2) "to or for the benefit of a creditor"; 3) "for or on account of an antecedent debt owed by the debtor before such transfer was made"; 4) "made while the debtor was insolvent"; 5) "made on or within 90 days before the date of the filing of the [bankruptcy] petition"; and 6) which would enable the creditor to receive more than he would receive if he had waited for the distribution of debtor's assets by the bankruptcy court.

the debtor to the defendant in satisfaction of the lease agreement early in October 1982."

In the opinion issued with the October 22, 1985 order, the bankruptcy court rejected the trustee's contention that the transfer of the debtor's property to Paolino involved a preference. The court reasoned that, since the transfer to Paolino was made not on account of an antecedent debt of the debtor, but on account of Council's debt, one of the main elements of a preference was not satisfied. *In re Energy Savings Center, Inc.*, at 102. However, the court then found that what had transpired constituted a fraudulent transfer voidable under 11 U.S.C. § 548(a). *Id.* at 102–103.[3] Moreover, in the bankruptcy court's view, given that Council had impliedly warranted to Paolino that the goods were his, Paolino was entitled to a judgment against Council for the $12,000 due on the rent. *Id.* at 103.

### I.

Essentially, Paolino makes two arguments on appeal. He first contends that, because the trustee did not include in his complaint a cause of action under Section 548 and because this section was never mentioned or argued during the trial, the bankruptcy court erred in avoiding the transfer under this section. Paolino's Memorandum at 5–6. He then argues that even if the bankruptcy court was correct to detect a cause of action under Section 548 in the trustee's complaint, the bankruptcy court misapplied this section to the facts of the case. *Id.* at 3–5.

■ With respect to the first argument, Paolino contends that the trustee failed to comply with Bankruptcy Rule 7008, which incorporates by reference Federal Rule of Civil Procedure 8. This latter rule requires a plaintiff to give "a short and plain statement of the claim showing that the pleader

is entitled to relief." Paolino contends that the trustee's amended complaint did not set forth a claim under Section 548 and thus did not put him on notice that such a claim was being asserted. He seems to suggest that, had he been aware of this Section 548 claim, he would have offered a defense as to it, instead of restricting his defense to the preference question. Paolino's Memorandum at 5–6.

It is true that the amended complaint of the trustee is less than a model of clarity. To be sure, the "alternative cause of action" expressly asserts that the challenged transfer constitutes "a preference under the Bankruptcy Code," but the nature of the first cause of action is not set forth with much precision. As mentioned above, the bankruptcy court considered the first claim to be one under Section 542 for a "turnover" of property. A claim made under Section 542, however, is not necessarily distinct from claims under other sections. For example, if a particular transfer of property is voidable as a fraudulent transfer under Section 548, then this property, now deemed property of the estate, becomes subject to the "turnover" authority contained in Section 542. Moreover, the allegations associated with the first claim, particularly in paragraph 6 dealing with concealment of the debtor's property by Paolino, seem more than would be necessary for a simple claim under Section 542.

However, notwithstanding that the first claim in the amended complaint was less than clear, Paolino's own statements in the course of this litigation show that he understood the complaint to include a claim under Section 548. In paragraph 2 of his motion for leave to file a third-party complaint—a motion filed well before trial—he stated that, if plaintiff's allegations were true, then "Norman Council, upon [Paoli-

---

**3.** The applicable section of the Bankruptcy Code, Section 548, as it stood before the 1984 amendments, is set out on pages 6–7 of the bankruptcy court's opinion. In sum, a fraudulent transfer is 1) a "transfer of an interest of the debtor in property" 2) "made or incurred on or within one year before the date of the filing

of the petition" 3) where "the debtor received less than a reasonably equivalent value in exchange for such transfer" and 4) where "the debtor was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer."

no's] information and belief, would be a fraudulent transferee of the assets of Debtor, or a preferential transferee of Debtor's assets." In the third-party complaint itself, Paolino mentioned that, if plaintiff's allegations were to be believed, then "Norman Council himself caused a preference and a fraudulent transfer under 11 U.S.C. §§ 547 and 548, of the assets of Energy Saving Center, Inc. to himself." Third-Party Complaint, para. 9; *see also* Transcript at 28.

■ Paolino also argues that, even if the bankruptcy court was correct in its consideration of Section 548, the court erred in ordering judgment against him in the amount of $10,000. This argument rests upon Section 550(b)(1) that deals with the liability for a fraudulent transfer—or for other voidable transfers—of "any immediate or mediate transferee" who received the property at issue from the initial transferee involved in the fraudulent transfer. Such "immediate or mediate" transferee is free from liability as long as he took the property "for value, including satisfaction ... of present or antecedent debt," "in good faith," and "without knowledge of the voidability of the transfer avoided." Paolino contends that, since the bankruptcy court concluded that Paolino took the property for value—to satisfy the debt owed on the lease—and in good faith—because Council represented the property as his own—it should have applied Section 550(b)(1) and excepted him from liability.

It is not, however, necessary to consider whether Paolino satisfies the requirements of Section 550(b)(1): it is apparent that the bankruptcy court considered Paolino the primary transferee involved in the fraudulent transfer and Paolino has not pointed to facts compelling the conclusion that this finding was clearly erroneous. In other words, Paolino has not pointed to uncontroverted evidence establishing what appears

to be his view of the facts: that, by asking Paolino to take the debtor's property in exchange for his personal debt, Council fraudulently transferred this property to himself, which would make Paolino a secondary transferee. Rather, the evidence suggests that, as the bankruptcy court found, Council simply told Paolino to take possession of debtor's property—an invitation Paolino readily accepted—and that the fraudulent transfer was between debtor and Paolino. The further fact, as found by the bankruptcy court, that Council made an implied warranty to Paolino that he owned the property—a finding from which the court concluded that Council would be liable to Paolino for the rent indebtedness—implies only that such a warranty was made; it does not establish that an initial transfer was carried out between Council and himself.

■ Arguably, as the initial transferee in a fraudulent transfer, Paolino might seek the protection of Section 548(c), which states in pertinent part:

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

However, it is apparent that Paolino cannot satisfy the requirements of this subsection. Whereas "value" can include the satisfaction of an antecedent debt, this debt must be that of the debtor. *See* 11 U.S.C. § 548(d)(2)(A). The debt Paolino satisfied when taking possession of the property was one owed by Council to him.[4]

---

4. While it is not necessary to make any determination as to Paolino's good faith, given his failure to meet the value requirement, from a perusal of the record I would think that Paolino would have some difficulty establishing his good faith in acquiring debtor's property. *Cf.* 4

*Collier on Bankruptcy,* para. 548.07[2], at 548–63 to 548–64 (good faith means a lack of knowledge of any circumstance placing the transferee on notice of the financial condition of the transferor).

For the above reasons, I conclude that the bankruptcy court was correct in imposing liability on Paolino·for the fraudulent transfer. Accordingly, the bankruptcy court's judgment against him is sustained.

## II.

The second appeal—that by Council himself—comes before this court in an unusual procedural posture. In the October 22, 1985 order, the bankruptcy court entered a judgment in favor of Paolino and against Council in the amount of $12,000. On November 1, 1985, Paolino filed in the bankruptcy court a timely notice of appeal. However, it was not until January 21, 1986 that Council filed any document challenging the bankruptcy court's ruling, and that was a submission, filed in this court, entitled "a brief of Norman A. Council on appeal from order of the bankruptcy judge entered on October 22, 1985."

In his submission, Council contends that 1) the bankruptcy court was without jurisdiction to enter the order against him in that he was never joined as a party to the suit, and 2) such a judgment against him was a violation of his right to due process. It does appear from the bankruptcy court's docket that, whereas Paolino's motion to implead Council was granted, the third-party complaint was never served upon Council and he in fact filed no answer to it. Council was present at trial as a witness and was accompanied by William Schroeder, Esq, his attorney. As the trial transcript discloses, however, Mr. Schroeder was not permitted by the bankruptcy court to participate fully in the trial. *See* Transcript at 27–28.

However, it is equally apparent from the record that Council was aware of the bankruptcy court's order of October 22, 1985. Indeed, a copy of this order was sent to Council's attorney, Mr. Schroeder, on the date the order was issued. *See* Opinion at 11. Moreover, as Council's submission to this court suggests, it was Council's intention to appeal this order. Council's Memorandum at 3. Accordingly, I must consider whether Council's failure to file a notice of appeal prevents me from reaching the substance of his disagreement with the bankruptcy court.

It is well established that Bankruptcy Rule 8002, which establishes the time for filing a notice of appeal from a judgment of the bankruptcy court, is jurisdictional. *See, e.g., In re LBL Sports Center, Inc.,* 684 F.2d 410, 412 (6th Cir.1982). Thus, if a party fails to satisfy its requirements, a district court cannot consider the merits of the party's appeal. Rule 8002(a) establishes a basic ten-day period from the entry of judgment for the filing of a notice of appeal. However, if a party files a timely notice, this subsection gives any other appellant an additional ten days from the date of this filing to submit his appeal. Moreover, Rule 8002(c) gives a party an additional twenty days "from the expiration of the time otherwise prescribed by this rule" if within this twenty-day period the party makes a request for an extension of time and a showing of "excusable neglect" for failure to meet the basic time period. Accordingly, the structure of this rule provides any party who has notice of a bankruptcy court's judgment an adequate amount of time in which to file an appeal.

■ However, even if I were to characterize Council's January 21, 1986 submission as a request for an extension of time—a characterization that would be difficult given that the submission fails to explain the late filing—the submission is well beyond any possible extension period that could be computed under Rule 8002. Accordingly, I conclude that I am without jurisdiction to reach the merits of Council's appeal. Thus, insofar as his belated submission challenges the bankruptcy court's judgment against him, I must deny it.

An appropriate order follows.